# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ZOBAIDA MASUD, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) No. 13 C 6419 |
|     v. | ) |
| | ) Judge Jorge L. Alonso |
| ROHR-GROVE MOTORS, INC., d/b/a | ) |
| ARLINGTON NISSAN, | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Zobaida Masud, sues defendant, Rohr-Grove Motors, Inc., her former employer, for discrimination, hostile work environment harassment, and retaliation under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and common-law retaliatory discharge. This case is before the Court on defendant's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

The Court will briefly summarize the facts to provide the relevant background for the present motion. Defendant, a car dealer, hired plaintiff as a finance manager in June 2009. (Masud Dep., ECF No. 77-5, at 25-26, 78.) Plaintiff's job duties were to assist customers who had purchased an automobile with the legal and financial paperwork required to complete the transaction and help them secure financing, if necessary. (Pl.'s LR 56.1(b)(3)(B) Resp. ¶ 16.) Plaintiff is a Muslim woman of Palestinian Arab descent. (Am. Compl. ¶ 4; Masud Dep., ECF No. 77-5, at 12-13.)

Plaintiff claims that, virtually from the beginning of her time at Arlington Nissan, she was harassed by Sharif Qadri and Matt Tubai,[1] two members of the sales team at Arlington Nissan. (Pl.'s LR 56.1(b)(3)(B) Resp. ¶ 5.) Almost every day, either together or individually, Tubai and Sharif—whose brother was Latif Qadri, the general manager of Arlington Nissan and the man who had hired plaintiff—would approach plaintiff in her office and make lewd or threatening comments to her. (*Id.*)

In her response to defendant's Local Rule 56.1(a)(3) statement of material facts,[2] plaintiff describes the harassment as follows:

> [Sharif and Tubai] verbally expressed to Plaintiff their sexual fantasies of beating and raping of Plaintiff to make her pregnant; referred to Plaintiff as a "whore" because she wore "western dress" which Matt Tubai and Sharif Quadri told Plaintiff was improper for an Arab and Muslim woman; Matt Tubai and Sharif Quadri on company computers displayed to Plaintiff photos of nude men and pornographic videos of men and women engaged in sex acts; Matt Tubai more so than Sharif Quadri and A.C. Hengler blared loud rap music from his office, sometimes within earshot of customers, that referred to women as "bitches" and "whores", to "fucking" women, "blowjobs", "cunt", and "pussy," (Maxwell Dep. PX-7 pp. 21:8-24, 22:1-4), (Connor Dep. PX-6 pp. 146:16-24, 147-149:1-12), (Connor Aff. PX-5, 145:14-24, 155:13-22), (Maxwell Dep. PX-7 p. 24:6-24), (Ans.Interrog. PX-3, Nos. 1, 7); verbally expressed to Plaintiff that they would like to "fuck her like she had never been fucked before", (Ans. Interrog. PX-3 No.1); Sharif Quadri asked Plaintiff if she had ever been "fucked in the ass" and said to Plaintiff he would like to "fuck her in the ass," (Masud Dep. DX-77-5 pp. 102:22-24, 103:1-5); Sharif Quadri said to Plaintiff multiple times in her office that he wanted to "fuck" Plaintiff "like she had never been fucked before", (Masud Dep. DX-77-5 p.126:15-23), and then asked Plaintiff why she was dating a white man and then said to Plaintiff, if Plaintiff were in "our" country, meaning his and Matt Tabai's Pakistan, men would beat, rape, stone and then divorce Plaintiff for being with somebody other than a Muslim man, (Masud Dep. DX-77-5 p.117:12-20, 140:8- 14, 150-151); Matt Tabai asked Plaintiff if she had kids,

---

[1] Matt Tubai's name is also rendered as Majeed Tubai, Majeed Tagatubai, and Matt Tagatubai, among other variations.

[2] In its reply brief, defendant moves to strike portions of plaintiff's brief and her Local Rule 56.1(b)(3) response "because they smuggle additional facts, contain legal arguments, are not supported by the record, and fail to meet the [rule's] prerequisites." (Reply at 2.) The Court agrees that plaintiff's Local Rule 56.1(b)(3) response did not consistently provide concise, focused answers that were precisely tailored to particular statements of fact, and some paragraphs strayed a bit too close to legal argument, but on the whole, the response achieved its purpose of aiding the Court by directing it to evidence in the record that supported plaintiff's position. The Court declines to strike anyportions of the 56.1(b)(3) response or the response brief.

telling Plaintiff he did not have kids but that he could "fuck" Plaintiff for the purpose of giving him a kid, (Masud Dep. DX-77-5 p. 296:10-22); Matt Tabai repeatedly asked Plaintiff why her family did not kill her for dating a white man, (Masud dep. DX-77-5 pp.356:11-24, 357); Sharif Quadri removed Plaintiff's cellphone from her desk, made her beg him to return the phone to her and told Plaintiff he was going to undo his pants and show Plaintiff how proud he was of his genitals, (Masud Dep. DX- 77-5 pp. 97:12-24, 98:1-6). Sharif Quadri on two occasions pulled Plaintiff's hair, on one occasion removed her hair clip and on multiple occasions rubbed Plaintiff's shoulders—once with Matt Tabai present— while standing behind Plaintiff as she sat at her desk in her office, attempting to perform a massage on Plaintiff. (Masud Dep. DX-77-5 pp. 101-104:1, 105:4-24, 106-108:5, 164:1-13). When Plaintiff responded to the sexual harassment by trying to get Sharif Quadri and Matt Tabai out of her office, Sharif Quadri and Matt Tabai humiliated Plaintiff by laughing at her. (Connor [D]ep. PX-6 p. 157:1-15).

(Pl.'s LR 56.1(b)(3)(B) Resp. ¶ 5.)[3] As the internal record citations in the above passage show, other former Arlington Nissan employees have corroborated some of these allegations, although defendant denies them. (Defs.' LR 56.1(a) Reply ¶ 5.)

Plaintiff claims that she complained about Sharif and Tubai's conduct, although Latif denies ever hearing anything about it from her (*id.* ¶ 7), but the harassment continued unabated. (Pl.'s LR 56.1(b)(3)(B) Resp. ¶ 22.)[4] Plaintiff also feared that defendant was not properly calculating her compensation, which was based on commission, and she complained to Pam Bockwinkle,[5] defendant's chief financial officer and comptroller. (*Id.* ¶ 28.)

On August 27, 2009, plaintiff had an altercation with Bockwinkle. (*Id.* ¶ 36.) The details and causes of the altercation are disputed, but Bockwinkle testified at her deposition that, after

---

[3] Plaintiff refers at times in this paragraph, as elsewhere in her Local Rule 56.1(b)(3) response, to her interrogatory answers (ECF No. 84-3). In its reply brief, defendant objects to plaintiff's using unverified interrogatory responses, unsigned by plaintiff herself, in opposition to defendant's motion. Since defendant filed its reply brief, plaintiff has submitted properly signed and verified interrogatory answers to the Court (ECF No. 90-1), and the Court considers them in place of the unverified versions.

[4] Defendant claims that this response is "not supported by the record" and should be disregarded and deemed admitted, based on *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 689 (7th Cir. 2000), which holds that answers that do not deny alleged facts with citations to evidence in the record must be deemed admitted. However, plaintiff cites to her deposition in her response to paragraph 22. Defendant makes similar objections to numerous paragraphs of plaintiff's Local Rule 56.1 (b)(3) response, but plaintiff has not failed to cite to evidence in the record in these paragraphs; defendant simply disagrees with her interpretation or characterization of the evidence. There is no basis for disregarding plaintiff's denial.

[5] The parties typically spell the name "Bockwinkle," but it also appears in the record as "Bockwinkel."

the altercation, she told Latif either to fire plaintiff or get her under control. (*Id.* ¶ 41.) Later that day, Latif fired plaintiff, giving the altercation with Bockwinkle as the primary reason for her termination. (*Id.* ¶ 46.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, and she received a right-to-sue letter mailed on June 11, 2013. (Am. Compl. Ex. 4.) She subsequently brought this lawsuit. Her amended complaint consists of five counts. Counts I-IV are claims for various violations of Title VII based on plaintiff's sex, race, "ancestry/ethnicity" (Am. Compl. ¶¶ 44, 54, 63), and religion. These counts are captioned as discrimination (Count I), hostile work environment (Count II), disparate treatment (Count III), and retaliation (Count IV). Count V is for retaliatory discharge under Illinois law.

## **DISCUSSION**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court may not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

In the present motion for partial summary judgment, defendant seeks judgment in its favor "as to all issues except Plaintiff's Title VII sexual harassment claim." (Mem. Supp. Summ. J. at 1.) Plaintiff does not respond to a number of defendant's arguments in its opening brief, and plaintiff's silence operates as a waiver. *See Merry Gentleman, LLC v. George & Leona Prods., Inc.*, 76 F. Supp. 3d 756, 761 (N.D. Ill. 2014).

The Court discerns from plaintiff's response brief that she intends to pursue essentially four claims: hostile work environment harassment, retaliation, and discrimination,[6] all under Title VII; and retaliatory discharge under Illinois common law. Defendant concedes that there is a genuine issue of material fact as to whether plaintiff was sexually harassed, but it seeks summary judgment on any claim of harassment or hostile work environment based on race, religion or national origin, and on all other claims.

## I. HOSTILE WORK ENVIRONMENT

Defendant contends that the evidence cannot reasonably support any finding of harassment on the basis of race, religion, or national origin.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer may be liable for discrimination, within the meaning of Title VII, if an employee is subject to a hostile work environment based on any of the characteristics enumerated by the statute. *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). To prevail on a hostile work environment claim, the employee must show that (1) she was subject to unwelcome harassment, (2) the harassment was based on a protected characteristic, (3) the harassment was so severe and pervasive as to alter the conditions of the employee's environment and create a hostile or abusive working environment, and (4) there is a basis for employer liability, such as knowledge or participation by supervisors. *Id.*

---

[6] Defendant contends that Counts I and III are duplicative, as both essentially seek relief for discrimination under Title VII, and they should be "merged into one claim having only one set of identified remedies." (Reply at 5.) Plaintiff's response brief does not directly address this issue, and, to the extent it does address it, plaintiff appears to concede that Counts I and III at least overlap. Section III.E. of the response brief is titled, "Disparate Treatment – FAC Counts I and III," as if to acknowledge that these counts state the same claim. The Court will treat Counts I and III as stating one disparate treatment discrimination claim.

First, defendant argues that plaintiff admitted that "she did not subjectively perceive her environment to be hostile on the basis of her race, national origin, ancestry, religion, or sex, apart from sexual harassment." (Reply at 9 (citing Pl.'s LR 56.1(b)(3)(B) Resp. ¶¶ 49-50, 52, 58, 63-64, 76)). Plaintiff makes no such admissions in any of the cited paragraphs.[7] At one point in her Local Rule 56.1(b)(3) response, in answer to a proffered fact concerning hostility based on race or national origin, she specifically states that she believes "her race and national origin were joined with her sex and gender as a basis for the sexual harassment" (*id.* ¶ 56), and it is equally clear that she views her religion to be "joined with" the other bases for the harassment (*id.* ¶¶ 5, 74-76).

Defendant also argues that plaintiff's contention that her sexual harassment "was 'infused' with other protected categories is insufficient to create a triable issue." (Reply at 10 (quoting Resp. Br. at 1).) In support of its position, defendant cites *Hafford v. Seidner*, 183 F.3d 506 (6th Cir. 1999), in which, according to defendant, the court "analyz[ed] whether a hostile work environment has been established based on different protected characteristics separately" and found that the plaintiff had a "hostile work environment claim for race, but not for religion." (Reply at 10.)

Defendant's reliance on *Hafford* is misplaced. While it is true that *Hafford* held that the plaintiff had stated a claim for race discrimination but not a claim for religious discrimination that could stand on its own, *Hafford* explicitly recognized that plaintiff's race and religion claims may be related to the extent plaintiff experienced discrimination for being a "black Muslim," and it directed the trial court on remand to consider "the possibility that the racial animus of

---

[7] It may be that defendant views plaintiff's occasional use of the term "sexual harassment" as tantamount to admitting that the harassment she experienced was purely sexual and not based on any other protected characteristic. The Court finds no such admission in plaintiff's use of the term "sexual harassment" as a shorthand term for harassment that may have had numerous causes.

plaintiff's co-workers was augmented by their bias against his religion." *See Hafford*, 183 F.3d at 514-15 (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415–17 (10th Cir. 1987) ("[I]ncidents of racial harassment which may, by themselves, be insufficient to support a racially hostile work environment claim can be combined with incidents of sexual harassment to prove a pervasive pattern of discriminatory harassment in violation of Title VII.")).

In this case, plaintiff has not attempted to state a discrete harassment or hostile work environment claim for each of her numerous protected characteristics, and the evidence, viewed in the light most favorable to plaintiff, supports a pervasive pattern of discriminatory harassment based on not one but various protected characteristics all at once. For example, plaintiff alleges that Tabai and Sharif insinuated that plaintiff's family should kill her or otherwise punish her for dating a white, non-Muslim man.[8] (Pl.'s LR 56.1(b)(3)(B) Resp. ¶ 5.) A jury could reasonably conclude that their abuse was motivated by race or religion, as well as sex.

Evidence of national origin discrimination may seem to be more elusive, to the extent that term might refer to discrimination on the basis of plaintiff's Palestinian heritage, specifically. But even if the fact that she was Palestinian, *per se*, did not drive any alleged harassment, the fact that she was at least broadly "Middle Eastern" may have. (*See, e.g.,* Maxwell Dep., ECF 79-4, at 17-18.) Under such circumstances, summary judgment is inappropriate. *See Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 922-23 (7th Cir. 2007) (evidence

---

[8] Defendant does not seriously argue the point, but the Court notes parenthetically that, to whatever extent Tubai, Sharif, and Latif might be deemed to share an ethnic or religious background with their alleged victim, that fact alone is no impediment to plaintiff's Title VII claim, if she succeeds in proving it. *See Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 530 (7th Cir. 2003), *Hansborough v. City of Elkhart Parks & Recreation Dep't*, 802 F. Supp. 199, 206 (N.D. Ind. 1992); *Veatch v. Nw. Mem'l Hosp.*, 730 F. Supp. 809, 817 (N.D. Ill. 1990); *see also Williams v. Wendler*, 530 F.3d 584, 587 (7th Cir. 2008) ("There can, it is true, be 'racial' discrimination within the same race . . . ."); *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158-59 (7th Cir. 1996) (white employee could prevail on race discrimination claim against white supervisor if proved).

that plaintiff is "Latino" is enough to form element of *prima facie* case of national origin discrimination).

There is no need to determine, and the Court does not determine, whether plaintiff might have survived summary judgment on any of her race, religion, or national origin harassment claims, standing alone. It is enough that there is evidence of harassment based on race, religion, and national origin, in addition to sex, and, taking all the evidence together and viewing it in the light most favorable to plaintiff, the evidence creates a genuine issue of fact as to whether there was a pervasive pattern of harassment based on plaintiff's protected characteristics. Summary judgment is denied as to plaintiff's Title VII hostile work environment claim.

## II. RETALIATION

In addition to prohibiting certain unlawful employment practices in 42 U.S.C. § 2000e-2(a), as described above, Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C.A. § 2000e-3(a). This type of discrimination is commonly known as "retaliation." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). A plaintiff may prove retaliation by using either the direct method or the indirect method, which the Seventh Circuit has explained as follows:

> Under the direct method, [the plaintiff] must demonstrate that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two. Under the indirect method, the first two elements remain the same, but instead of proving a direct causal link, the plaintiff must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination. Once a plaintiff establishes the *prima facie* case under the indirect method, the defendant must articulate a nondiscriminatory reason for its action; if he does, the burden remains with the plaintiff to demonstrate that the defendant's reason is pretextual.

*Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009) (internal citations omitted). The plaintiff must show that the protected complaints were a but-for cause of the adverse action by the employer, although they need not be the only cause. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)). The plaintiff can prove causation via direct evidence (akin to an admission) or "by presenting a 'convincing mosaic of circumstantial evidence' that would permit the same inference without the employer's admission." *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)).

In Title VII cases, the Seventh Circuit has recognized three categories of circumstantial evidence available to a plaintiff using the "convincing mosaic" approach. *Id.* The first is "suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of [retaliatory] intent might be drawn." *Id.* (citing *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011)). The second is "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently." *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003). The third is "evidence that the employer offered a pretextual reason for an adverse employment action." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 586-87 (7th Cir. 2011). "Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

Defendant claims that it is entitled to summary judgment on plaintiff's Title VII retaliation claim because her termination was not caused by any complaints she may have made

about discrimination. Plaintiff, apparently proceeding by the direct method, responds that there is circumstantial evidence permitting the inference of causation.

Plaintiff does not point to a similarly situated person who can serve as a comparator, but the evidence could support a reasonable inference of retaliation based on suspicious timing and pretext. Plaintiff has adduced evidence of pervasive, ongoing harassment by Matt Tubai and Sharif Qadri during June, July and August 2009, and she claims that she promptly complained of it to Arlington Nissan supervisors or executives, including Latif Qadri and Pamela Bockwinkle. It is undisputed that plaintiff was fired on August 27, 2009, less than three months after she began to work at Arlington Nissan. According to the deposition testimony of Latif and Bockwinkle, Bockwinkle told Latif to fire plaintiff or get her under control. Latif testified that he decided, chiefly based on the tension between Bockwinkle and plaintiff, but also based on plaintiff's poor performance as a low-producing finance manager and her disruptive complaints about compensation, that the best course of action was to fire plaintiff.[9] (Latif Qadri Dep., ECF No. 79-2, at 152.)

A jury could reasonably infer that Latif's stated reasons for firing plaintiff were a pretext for retaliating against an employee who had complained about ongoing sexual harassment

---

[9] The parties disagree as to who actually fired plaintiff. Plaintiff's position is that Latif fired her (Pl.'s LR 56.1(b)(3)(B) Resp. ¶ 47), whereas defendant argues that "Pamela Bockwinkle was the ultimate decisionmaker" (Reply at 10). Defendant's position is undermined by the deposition testimony of its own witnesses. Bockwinkle testified at her deposition that she did not fire plaintiff or tell Latif to fire plaintiff; what she told Latif on August 27, 2009 was something to the effect that "he needed to get [plaintiff] under control, that I [Bockwinkle] was done with her," and she "absolutely did not tell him to fire" plaintiff because she did not "have that authority." (Bockwinkle Dep., ECF No. 77-6, at 70.) Latif testified that Bockwinkle told him that plaintiff "was not a good fit for our store and that her behavior was . . . not appropriate and that she should *probably* go." (Latif Qadri Dep., ECF No. 79-2, at 149 (emphasis added).) However, Latif did not report directly to Bockwinkle and they were technically "equal" (*id.* at 151), although he took her opinion seriously because, as the long-serving comptroller, she "held a position of respect and influence in the company" (*id.* at 149-50) and she had the owner's "ear" (*id.* at 151). A possible inference from the testimony is that Latif fired plaintiff not so much because Bockwinkle told him to as because he judged that it would be prudent to fire plaintiff due to the deterioration of her relationship with Bockwinkle. (*Id.* at 149-152.) Even taking their testimony at face value, which the Court need not do at the summary judgment stage to the extent it might be unfavorable to the non-moving party, Latif and Bockwinkle seem to agree that Latif, not Bockwinkle, fired plaintiff, and a reasonable jury could certainly so conclude.

committed by two other employees, one of whom was Latif's brother and therefore an employee Latif might be uniquely interested in protecting. According to her deposition testimony, Bockwinkle did not *demand* that Latif terminate plaintiff, nor did she have the authority to do so, so the jury could find that Latif's decision to do so was attributable to plaintiff's complaints about his brother and Tubai's ongoing sexual harassment rather than the altercation with Bockwinkle. As for poor performance and disruptive complaints, plaintiff responds that she had not received any poor performance reviews; indeed, she was a new employee still in a probationary period, and as such, she had had no formal performance reviews. (Latif Qadri Dep., ECF No. 79-2, at 64.) A reasonable jury could find that these reasons, based on undocumented shortcomings, were a pretext.

To grant defendant's motion would be to rule on the credibility of the witnesses, which the Court may not do on summary judgment. Defendant's motion is denied as to the retaliation claim.

## III. RETALIATORY DISCHARGE

Defendant claims that the Court should grant summary judgment on plaintiff's common-law retaliatory discharge claim because the claim is preempted by the Illinois Human Rights Act and plaintiff was not terminated in retaliation for making any protected complaint.

The tort of retaliatory discharge represents a limited and narrow exception to the general rule of at-will employment. *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009). To prevail on a claim of retaliatory discharge under Illinois law, a plaintiff must show that (1) he was discharged (2) in retaliation for his activities, and (3) the discharge violates a clear mandate of public policy. *Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992). "The element of

causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Id.*

The Illinois Supreme Court has not precisely defined a clearly mandated public policy, but it has explained that public policy is "to be found in the State's constitution and statutes, and, where they are silent, in its judicial decisions," and it "concerns what is right and just and what affects the citizens of the State collectively . . . . [A] matter must strike at the heart of a citizen's social rights, duties and responsibilities before the tort [of retaliatory discharge] will be allowed." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878-79 (Ill. 1981). Courts sustain claims of retaliatory discharge that arise in one of only two settings: "where an employee is discharged for filing, or in anticipation of filing, a claim under the Workers' Compensation Act; or where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistleblowing.'" *Howell v. BNSF Ry. Co.*, No. 14 C 9977, 2015 WL 3528237, at *2 (N.D. Ill. June 4, 2015) (quoting *Michael v. Precision Alliance Grp., LLC*, 21 N.E.3d 1183, 1188 (Ill. 2014)). It is well-established that a plaintiff who was fired for reporting criminal conduct may prevail on a retaliatory discharge claim as a "whistleblower." *Corral v. UNO Charter Sch. Network, Inc.*, No. 10 CV 3379, 2013 WL 1855824, at *11 (N.D. Ill. May 1, 2013) (citing cases).

### A. Preemption

An Illinois tort claim is preempted by the Illinois Human Rights Act (the "Act")—which prohibits such civil rights violations as sexual harassment and retaliation for opposing sexual harassment, *see Corluka v. Bridgford Foods of Illinois*, 671 N.E.2d 814, 817 (Ill. App. Ct. 1996)—if the claim is "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [Illinois Human Rights] Act itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997) (citing *Geise v. Phoenix Co. of Chi.*, 639 N.E.2d 1273,

1277 (Ill. 1994)). In other words, the Act only preempts a tort claim if there is no "basis for imposing liability [on the tort claim] . . . without reference to the legal duties created by the Act." *Blount v. Stroud*, 904 N.E.2d 1, 10 (Ill. 2009) (citing *Maksimovic*, 687 N.E.2d at 23). Defendant argues that plaintiff's retaliatory discharge claim is preempted to the extent she claims that she was terminated for complaining about sexual harassment because the Act directly prohibits just that sort of termination. *See Bozek v. Corinthian Colls., Inc.*, No. 07 C 4303, 2009 WL 377552, at *9 (N.D. Ill. Feb. 13, 2009) (citing *Corluka,* 671 N.E.2d at 817).

Plaintiff responds that her retaliatory discharge claim is not predicated on complaints of sexual harassment alone; rather, it is predicated on internal reporting of battery, assault and intimidation, all of which are prohibited by the Illinois Criminal Code and therefore provide a basis for imposing liability for retaliatory discharge "without reference to the legal duties" created by the Illinois Human Rights Act. Defendant replies that plaintiff's claim is nevertheless "inextricably linked" with retaliation for complaints about sexual harassment—indeed, it is at the core of her claims against defendant—and her claim is therefore preempted.

The Court agrees with plaintiff. Defendant incorrectly emphasizes the shared facts of any predicate sexual harassment claim and any assault, battery, or intimidation that defendant's employees may have committed against plaintiff; the proper inquiry focuses on the source of the legal duties defendant or its employees allegedly breached. *See Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1021 (N.D. Ill. 2014). A retaliatory discharge claim is not preempted merely because it rests on facts that could also support a claim under the Act, if the retaliatory discharge contravened some public policy other than the one embodied in the Act—such as the public policy embodied in the Illinois Criminal Code. *See Maksimovic*, 687 N.E.2d at 23 (intentional tort claims such as assault and battery not preempted because they "exist wholly separate and

13

apart from a cause of action for sexual harassment" under the Act); *Blount*, 904 N.E.2d at 10 (plaintiff's claim of retaliatory discharge for refusing to perjure herself as to whether her employer had racially discriminated against another employee not preempted because perjury is a crime, so "plaintiff need not and does not rely upon the public policy embodied in the Act to satisfy the elements" of her retaliatory discharge claim). Plaintiff's retaliatory discharge claim is not preempted by the Illinois Human Rights Act.

### B. Evidence of Elements of Retaliatory Discharge

Defendant contends that even if the retaliatory discharge claim is not preempted, plaintiff has not adduced evidence sufficient to satisfy the causation element of the claim. According to defendant, plaintiff has introduced no evidence that she was terminated for complaining about assault, battery and intimidation; rather, the essence of her claims is that she was terminated for complaining about harassment. However, plaintiff has alleged in Count V of her complaint that she was terminated in retaliation for her internal complaints of potentially criminal conduct by employees of defendant, and the Court has already explained that it cannot determine on summary judgment what the true reason for plaintiff's termination was. A reasonable jury could conclude that Latif Qadri terminated plaintiff for making complaints about possibly criminal acts that his brother may have committed. Defendant's motion for summary judgment is denied as to the retaliatory discharge claim.

## IV. DISCRIMINATION

In Counts I and III of her complaint, plaintiff claims that she suffered disparate treatment discrimination under Title VII. However, she does not clearly point to any adverse employment actions other than the above-described hostile work environment and retaliation, and it is unclear from the complaint if these counts make any distinct claims. In the section of her response brief

titled "Disparate Treatment – FAC Counts I and III," plaintiff asserts that she suffered disparate treatment because she was subjected to a "two-month barrage of harassment," but that merely restates her Count II hostile work environment claim, which the Court has already addressed.

It also appears from the disparate treatment section of plaintiff's response brief that she is claiming to have been paid less than other employees based on her race, sex, national origin or religion, but the Court agrees with defendant that there is not sufficient evidence of any pay disparity to create a triable issue of fact. The only fact plaintiff asserts in her brief in support of her discrimination claim is that she was paid a 16 percent sales commission while a white, non-Muslim male was paid 18 or 20 percent. However, the evidence shows that this particular employee, Rick Caruso, was paid a higher rate based on his long experience and supervisory responsibilities. (Defs.' LR 56.1(a)(3) Stmt. ¶ 20.) Plaintiff ostensibly denies this fact in her Local Rule 56.1(b)(3) response (Pl.'s LR 56.1(b)(3)(B) Resp. ¶ 20), but in the very next paragraph she admits (as she admitted at her deposition) that Caruso was "in charge" of the finance department and she aspired to his position (*id.* ¶ 21; Defs.' LR 56.1(a)(3) Stmt. ¶ 21 (citing Masud Dep., ECF No. 77-5, at 114-15 ("Rick was kind of in charge of the department"), 178, 181-82, 187-88, 191, 380)). Further, there is no genuine dispute that numerous white males working at Arlington Nissan at or near the relevant time period were paid starting commission rates of 15 percent, lower than plaintiff's initial rate. (Defs.' LR 56.1(a)(3) Reply ¶ 20.) Plaintiff does not assert any other evidence in support of her alleged discriminatory treatment with regard to compensation. The Court must grant summary judgment for defendant on any such claim.

To the extent plaintiff's Count I and Count III disparate treatment discrimination claim rests on any employment action other than the above-discussed hostile work environment and retaliation, the Court grants defendant's motion for summary judgment as to that claim.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted in part and denied in part. The motion is denied as to plaintiff's state law retaliatory discharge claim, her Title VII retaliation claim, and her hostile work environment harassment claim. The motion is granted as to plaintiff's disparate treatment discrimination claim, to the extent that claim rests on any employment actions other than those that form the basis for her surviving retaliation and hostile work environment claims. A status hearing is set for November 5, 2015 at 9:30 a.m.

**SO ORDERED.**

ENTERED: October 13, 2015

_____
**HON. JORGE L. ALONSO**
**United States District Judge**